# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR AQUINO, SUSAN FORD, MONICALAYLE GARCIA, BARBARA KRAUS, MARTHA LOPEZ, FRANCISCO MARTINEZ, MEGAN SARGENT, individually and as a representative of a Putative Class of Participants and Beneficiaries, on behalf of the 99 CENTS ONLY STORES 401(K) PLAN,<br><br>                         Plaintiffs,<br>         v.<br>99 CENTS ONLY STORES LLC; THE RETIREMENT COMMITTEE OF THE 99 CENTS ONLY 401(K) PLAN; and DOES 1 through 20,<br><br>                         Defendants. | Case No. 2:22-cv-01966-SPG-AFM<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [ECF NO. 67]** |

Before the Court is an unopposed motion for preliminary approval of a class action settlement from Plaintiffs Salvador Aquino, Susan Ford, Monicalayle Garcia, Barbara Kraus, Martha Lopez, Francisco Martinez, Megan Sargent ("Plaintiffs"), both individually and as a representative of a Putative Class of Participants and Beneficiaries, on behalf of the 99 Cents Only Stores 401(K) Plan (the "Plan"). (ECF No. 67). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds these matters suitable for resolution without a hearing. *See* Fed. R. Civ. P. 78(b); Central District of California Local Rule 7-15. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement.

## I. BACKGROUND

### A. Plaintiffs' Allegations

This is a putative civil rights class action lawsuit brought by Plaintiffs against Defendants 99 CENTS ONLY STORES LLC ("99 Cents") and the Retirement Committee of the 99 Cents Only Stores 401(k) Plan ("Retirement Committee") seeking repayment to the Plan of the lost profits from Defendants' breaches of their fiduciary duties under the Employee Retirement Income Security Act ("ERISA") and injunctive relief. (ECF No. 40 ("FAC")). Plaintiffs were employees of 99 Cents and participants in the Plan. (FAC ¶ 14–20). Defendant 99 Cents was the sponsor and administrator of the Plan, and Defendant Retirement Committee, comprised of Defendants John Does, assisted in the Plan's administration. (FAC ¶ 22–24).

Plaintiffs claim they were injured by Defendants' "lack of skill, flawed processes and imprudent decisions," which Plaintiffs assert were in breach of Defendants' fiduciary duties, because "(1) Defendants offered Plaintiffs, and Plaintiffs invested in, higher cost fund shares when otherwise identical lower cost shares were available … (2) Defendants permitted Plaintiffs and other Plan participants to be charged excessive service fees, … and (3) Defendants chose and continually offered Plaintiffs, conflicted, expensive, proprietary target date funds, which also served as the default investment as opposed to a myriad of other lower cost, unconflicted, prudent options." (FAC ¶ 8). As a result, Plaintiffs claim they experienced reduced account balances and diminished returns on their 401(k) investments. (*Id.*).

### B. The Settlement Agreement

According to Plaintiffs' Motion, the parties reached settlement "after over a year of hard-fought litigation, including discovery, motion practice, and after arms-length negotiations." (ECF No. 67 ("Mot.") at 1). The parties engaged in settlement negotiations over the course of several months. (Mot. at 7–8). Their settlement efforts included a mediation session with a mediator from Judicial Arbitration and Mediation Services on November 7, 2022. (*Id.*). On April 17, 2023, the parties executed their final settlement

agreement. (ECF No. 67-2 ("Humphrey Decl.") ¶ 8); *see* (ECF No. 67-3 (the "Settlement Agreement")). The Settlement Agreement provides the following key provisions:

### 1. Class Definition

The Settlement Agreement defines the putative class as: "All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO[1] who participated in the Plan at any time during the Class Period." (Settlement Agreement § 1.53). The Class Period ranges from March 25, 2016, through the date the Court approves the proposed agreement. (*Id.* § 1.14). There are approximately 5,700 class members and approximately $76,827,166 in Plan Assets. (Humphrey Decl. ¶ 9).

### 2. Monetary Relief

Defendants will deposit $750,000 into the settlement fund within 21 days of either the Court's Preliminary Approval Order or the establishment of the Qualified Settlement Fund. (Settlement Agreement § 4.4). The Settlement Administrator will then distribute payments to the Plan to be added to the active accounts of current Plan participants and to former participants of the Plan via individual check or by depositing the payments into their individual retirement accounts. (Settlement Agreement, Ex. B §§ 1.2, 1.6, 1.7). The Settlement Administrator will calculate payments according to instructions set forth in the Plan of Allocation. (*Id.* § 1.5). An Independent Fiduciary will review the Settlement Agreement and related application for fees and provide their opinion prior to the final fairness hearing. (Mot. at 26).

### 3. Attorneys' Fees and Costs

The putative class will be represented by Christina Humphrey Law, P.C. and Tower Legal Group, P.C. (*Id.* ¶ 1.12). Class Counsel seeks $250,000 in attorneys' fees, $82,000

---

[1] "QDRO" is an acronym for Qualified Domestic Relations Order. *See* (Settlement Agreement § 1.42).

in litigation fees, and $70,000 in Class Representative Case Contribution Awards. (*Id.* ¶ 6.1). All fees will be paid from the Gross Settlement Account. (*Id.*).

          4.     <u>Release of Claims</u>

The Settlement Agreement requires class members to release "[a]ny and all actual or potential claims (including any Unknown Claims), actions, causes of action, demands, obligations, or liabilities (including claims for attorney's fees, expenses, or costs) for monetary, injunctive, and any other relief" against Defendants that arise out of or relate to: "(a) the conduct alleged in the Complaint …whether or not the conduct was actually included as counts in the Complaint; (b) the selection, retention, and monitoring of the Plan's actual or potential investment options and service providers; (c) the performance, fees, and other characteristic of the Plan's investment options and service providers; (d) the Plan's fees and expenses, including without limitation, its recordkeeping and other service provider fees; and (e) the nomination, appointment, retention, monitoring, and removal of the Plan's fiduciaries." (*Id.* § 1.44).

**C.    Procedural History**

On March 25, 2022, Plaintiffs filed their Class Action Complaint alleging two causes of action: (1) breach of fiduciary duties of prudence and loyalty, and (2) breach of fiduciary duties in violation of the duty to investigate and monitor investments and covered service providers. (ECF No. 1). On June 6, 2022, Defendants filed a motion to dismiss Plaintiffs' Class Action Complaint. (ECF No. 31). On June 27, 2022, Plaintiffs filed the First Amended Class Action Complaint, from which they removed the duty of loyalty claim, and modified allegations relating to the duty of prudence claim. (ECF No. 40). On July 11, 2022, Defendants filed a motion to dismiss the First Amended Complaint in part. (ECF No. 44). Plaintiffs opposed on September 28, 2022, (ECF No. 55), and Defendants replied on October 5, 2022. (ECF No. 57). After the Court granted a series of continuance requests from the parties to allow the parties to engage in settlement negotiations, *see* (ECF Nos. 60, 63), the parties notified the Court on April 11, 2023, that they had reached a settlement.

(ECF No. 65). On April 19, 2023, Plaintiffs filed the instant unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 67).

## II.   LEGAL STANDARD

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In considering such a request, the court must give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context." *Id.* Once a class is certified, Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before approving a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In the Ninth Circuit, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *In re Syncor*, 516 F.3d at 1101).

Court approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval. *See Tijero v. Aaron Bros., Inc.*, No. C 10–01089 SBA, 2013 WL 60464, *6 (N.D. Cal. Jan. 2, 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process."); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, *2 (E.D. Cal. June 13, 2006) ("[A]pproval of a class action settlement takes place in two stages."). At the preliminary approval stage, the court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *See* Manual for Complex Litigation (Fourth) § 21.632 (2004). However, the "settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final

Approval." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).

**III. DISCUSSION**

The parties seek conditional certification of the settlement class pursuant to Rule 23. For the reasons discussed below, the Court finds that Rule 23's requirements of numerosity, commonality, typicality, and adequacy of representation are all satisfied. *See* Rule 23(a)(1)–(4).

**A. Rule 23(a)**

**1. Numerosity**

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. *Hanlon*, 150 F.3d at 1019. To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012). Although there "is no numerical cutoff for sufficient numerosity," generally 40 or more members will satisfy the numerosity requirement. *Woodard v. Labrada*, No. EDCV 16-00189 JGB (SPx), 2019 WL 4509301, at *4 (C.D. Cal. Apr. 23, 2019) (citing *Keegan*, 284 F.R.D. at 522). Here, Plaintiffs estimate there are approximately 5,700 class members based on the number of accounts in the Plan during the Class Period. (Mot. at 15). Thus, numerosity is satisfied.

**2. Commonality**

Plaintiffs' claims meet the commonality requirement when they "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks omitted). Thus, where the circumstances of class members "vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Id.* (internal quotation marks omitted).

Here, Plaintiffs each participated in the Plan and have represented the putative class consisting of the Plan's participants and beneficiaries. (FAC ¶¶ 1, 9). The questions at issue in this case were common to each Plan participant, including: "(i) whether Defendants breached their fiduciary duties by maintaining the challenged investments in the Plan; (ii) whether the Plan suffered resulting losses; (iii) the manner in which to calculate the Plan's losses; and (iv) what equitable relief, if any, is appropriate in light of these alleged breaches." (Mot. at 17). Thus, because the class members were all Plan participants, there is sufficient commonality, as all four issues apply to each of them.

### 3. Typicality

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class they seek to represent. Fed. R. Civ. P. 23(a)(3). The purpose of the typicality requirement is to "ensure[] that the interest of the class representative 'aligns with the interests of the class.'" *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon*, 976 F.2d at 508). "A court should not certify a class if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Just Film*, 847 F.3d at 1116 (quoting *Hanon*, 976 F.2d at 508).

Here, Plaintiffs' claims are typical of the class because they arise out of the alleged mismanagement of the Plan by Defendants. The putative class is comprised of other participants and beneficiaries of the same Plan. Thus, Plaintiffs' claims are identical to those of the putative class, are based on the same alleged course of conduct, and involve the same injuries as those of the putative class.

### 4. Adequacy of Representation

Rule 23(a)(4) requires the Court to determine if the proposed class representatives and proposed class counsel will fairly and adequately protect the interests of the entire class. Fed. R. Civ. P. 23(a)(4). Class representatives are adequate if they have no conflicts of interest with the potential class and will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs seek the same relief as members of the proposed class and have no apparent conflicts of interest with the putative class members. (Mot. at 19–20). In addition, Class Counsel, Christina Humphrey Law, P.C. and Tower Legal Group P.C., have extensive experience with class actions, particularly employment class actions such as this one, and have the resources to represent the class effectively. (Humphrey Decl. ¶ 5; ECF No. 67-4 ("Clark Decl.") ¶ 6). Class Counsel also have already spent many hours vigorously prosecuting this action. *See* (Humphrey Decl. ¶¶ 13, 18). Based on the foregoing, the Court believes the proposed class representatives and counsel will adequately represent the interests of the class.

### B. Rule 23(b)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Plaintiffs seek to certify its proposed class under Rule 23(b)(1). (Mot. at 21). Rule 23(b)(1) provides that a class action may be certified where prosecuting separate actions by individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). Thus, "Rule 23(b)(1)(A) considers possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class members." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008). Most ERISA class actions, like Plaintiffs here, are certified under Rule 23(b)(1). *Id.* Plaintiffs appear to allege that the Court should certify the Proposed Class under either subsection (A) or (B). (Mot. at 21).[2]

Courts in the Ninth Circuit have regularly found Rule 23(b)(1)(A) to be satisfied in ERISA class actions because the defendants' fiduciary duties often require them to "treat all participants alike" and that "allowing thousands of putative class members to pursue individual actions could result in varying adjudications" and inconsistent obligations. *See Munro v. Univ. S. Cal.*, 2:16-cv-06191-VAP-Ex, 2019 WL 7842551, at *8 (C.D. Cal. Dec. 20, 2019) (internal quotations omitted); *see also Trujillo v. UnitedHealth Grp., Inc.*, No. ED CV 17-2547-JFW (KKx), 2019 WL 493821, at *8 (C.D. Cal. Feb. 4, 2019); *Marshall v. Northrup Grumman Corp.*, No. CV 16-06794-AB (JCx), 2017 WL 6888281, at *9 (C.D. Cal. Nov. 2, 2017). This is particularly true where plaintiffs seek injunctive relief. *See Munro*, 2019 WL 7842551, at *9; *Marshall*, 2017 WL 6888281, at *10. Here, Plaintiffs and unnamed class members were participants in the Plan administered by Defendants and brought this action on behalf of the Plan. (FAC ¶ 9). Because the issue here is the Plan's damages, "the determination must be the same for every participant and beneficiary," or else there would be risk of inconsistent judgments against Defendants. *See Marshall*, 2017 WL 6888281, at *9. In addition to repayment of lost profits, Plaintiffs also seek "to reform the Plan to comply with ERISA and to prevent further breaches of fiduciary duties and grant other equitable and remedial relief as the Court may deem appropriate." (FAC ¶ 9). Accordingly, the Court finds that Plaintiffs have satisfied Rule 23(b)(1)(A).

Plaintiffs' Proposed Class also satisfies Rule 23(b)(1)(B). Generally, Rule 23(b)(1)(B) is satisfied in ERISA class actions where claims on behalf of the Plan would

---

[2] Plaintiffs do not specify whether their proposed class satisfies either Rule 23(b)(1)(A) or (b)(1)(B). Although the proposed class need only satisfy subsection (A) "or" (B), the Court nevertheless considers both.

affect every participant in the Plan. *See Munro*, 2019 WL 7842551, at *10. Indeed, "a classic case of a Rule 23(b)(1)(B) suit is one with 'actions charging a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust.'" *Id.* at *9 (quoting *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 834 (1999)). Here, Plaintiffs and unnamed class members were all participants in the same Plan and owed the same fiduciary duties by Defendants. The outcome of any individual plaintiff's claim would necessarily affect every class member. Thus, Plaintiffs' proposed class also satisfies Rule 23(b)(1)(B).

## C. Rule 23(e)

Once it has been established that the proposed settlement would bind class members, "the court may approve it only after a hearing and only finding that it is fair, reasonable, and adequate" after considering the following factors:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Before the revisions to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit had developed its own list of factors to be considered. *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 964 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen.*

*Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). The revised Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns[.]" Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "The goal of [amended Rule 23(e)] is . . . to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*

### 1. Adequacy of Representation by Class Representatives and Class Counsel

The first factor requires that the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). Each of the Plaintiff Representatives has "diligently represented" the entire Class throughout this litigation by communicating with class counsel and "carefully consider[ing] the merits of the Settlement Agreement." (Humphrey Decl. ¶ 15).

As Class Counsel, Christina Humphrey Law, P.C. and Tower Legal Group P.C. reviewed "thousands of pages of documents, engaged in motion practice including responding to Defendants' motion to dismiss and negotiated this Settlement, extensively worked with experts before and after the litigation was filed, and participated in the November 7, 2022 mediation." (*Id.* ¶ 18). Both firms have significant experience in class action litigation, and Christina Humphrey Law, P.C. has particular experience litigating ERISA class actions such as this one. (Mot. at 22; Humphrey Decl. ¶¶ 3–6; Clark Decl. ¶ 13). Accordingly, this factor weighs in favor of approval.

### 2. Arm's Length Negotiation

The second factor requires that the proposed settlement have been negotiated at "arm's length." Fed. R. Civ. P. 23(e)(2)(B). Notably, this Settlement Agreement arose out of a mediation session. (Mot. at 7). This suggests the negotiations were "conducted in a manner that would protect and further the class interests." Fed. R. Civ. Pro. 23(e), 2018 Advisory Committee Notes; *see also Kaupelis v. Harbor Freight Tools*, No. SACV 19-1203 JVS (DFMx), 2021 WL 4816833, at *9 (C.D. Cal. Aug. 11, 2021) (finding the Settlement to have been negotiated at arm's length where it was the result of a mediation

session). Since the mediation, the Parties spent "substantial time negotiating the specific terms of the Settlement Agreement." (Mot. at 8). Accordingly, this factor weighs in favor of approval.

### 3. <u>Adequacy of the Relief</u>

The third factor requires the court to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The Court addresses each in turn.

#### a) *Costs, Risks, and Delay of Trial and Appeal*

"Often, courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. Here, the Parties were already engaged in contested litigation when they agreed to the Settlement, as evidenced by Defendants' two prior motions to dismiss. *See* (Mot. at 24; ECF Nos. 31, 44). Thus, continued litigation would likely be lengthy and complex with the need to rely on "competing expert testimony," and would likely end with a lengthy appeal. (Mot. at 23). Regarding likelihood of success, Plaintiffs estimate a 100% success rate at trial for their claims of excessive recordkeeping fees and share class violations, but a 50% chance of success as to their claims regarding the Plan's performance. (*Id.* at 25). The Settlement Agreement is valued at $750,000, which is 25% of the total potential damages to be sought at trial. (*Id.*). Given the lower estimated success rate and the high cost of continued litigation, the proposed settlement amount appears fair and reasonable.

#### b) *Effectiveness of Proposed Method of Relief Distribution*

The Court next considers the method for processing claims to ensure the proposed method facilitates filing legitimate claims. The Settlement Agreement lays out the Plan of Allocation that provides how class members, both current and former participants of the

Plan, receive payment. (Settlement Agreement, Ex. B). Active participants in the Plan "shall receive their settlement payments as additions to their Active Accounts." (*Id.* § 1.3). Former participants or beneficiaries who do not have active accounts with the Plan may receive settlement payments either as a rollover in an individual retirement account or by check. (*Id.*). The Plan of Allocation then provides instructions for the calculation of settlement payments by the Settlement Administrator. (*Id.* § 1.5). The Court finds this method of relief distribution to be effective.

### c) Attorney's Fees

The Court next considers "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). In considering the proposed award of attorney's fees, the Court must scrutinize the Settlement for three factors that tend to show collusion: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (internal quotation marks and alterations omitted).

Upon final approval, "Class Counsel will have to submit a formal motion for attorneys' fees along with evidence of time spent on the case and a lodestar calculation before the Court can approve a specific amount in attorneys' fees." *Kaupelis*, 2021 WL 4816833, at *10. Plaintiffs' Settlement Agreement provides for Class Counsel to receive attorneys' fees of $250,000, plus an additional $82,000 for attorney expenses. (Settlement Agreement § 6.1). That amount is one-third of the proposed settlement's value and therefore exceeds the 25% benchmark that courts in the Ninth Circuit generally find reasonable. *See Hanlon*, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). Nevertheless, at this preliminary approval stage, the Court find that Plaintiffs' requested fees are sufficiently reasonable. *See Campos v. Converse, Inc.*, No. EDCV 20-1576 JGB (SPx), 2022 WL 1843223, at *10

(C.D. Cal. Apr. 21, 2022) (finding an attorneys' fees request for one-third of the settlement amount reasonable at the preliminary approval stage, subject to further scrutiny at the final stage). However, "the Court will further scrutinize [the amount] at the final approval stage. *See id.*

Based on these the enumerated factors within Rule 23(e)(2)(C), the Court finds that the adequacy of proposed relief weighs in favor of approval.[3]

### 4. Equitable Treatment Among Class Members

"Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. As evidenced by the Settlement Agreement's Plan of Allocation, members of the Class are provided recovery "on a *pro rata* basis, with no preferential treatment for the Class Representatives or any segment of the Settlement Class." (Mot. at 28). The calculation method provided by the Plan of Allocation is the same for each class member. (Settlement Agreement, Ex. B § 1.5). Accordingly, because the proposed settlement treats all class members equally, this factor weighs in favor of approval.

In sum, therefore, the proposed Settlement Agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

### 5. Sufficiency of Notice

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed.

---

[3] Rule 23(e)(3) provides that the parties "must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The Parties here filed no such statement. Thus, subsection (iv) is neutral.

R. Civ. P. 23(e)(1). Notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575 (internal quotations omitted).

The proposed Settlement Notice describes the nature of the action and claims brought by Plaintiffs. (Settlement Agreement, Ex. A at 59). The Notice also explains who qualifies as a member of the class and how a member can either recover payment from the Settlement or file an objection to the Settlement Agreement. (*Id.* at 60–62). Additionally, the Settlement Administrator will send the Settlement Notice by email and first-class mail to the last known address of each class member. (Mot. at 27; ECF No. 67-5 "Mullins Decl." ¶¶ 5–6). Because all class members had Plan accounts, the Plan's recordkeeper has forwarding addresses for most class members. (Mot. at 27). Mailing the Notice to the last known addresses of class members "constitutes the best practicable notice under the circumstances." *Trujillo v. UnitedHealth Grp. Inc.*, 5:17-cv-2547-JFW (KKx), 2019 WL 13240414, at *2 (C.D. Cal. July 19. 2019). A Settlement Website and toll-free phone number will also be created to provide information and answer questions from class members. (Mot. at 27; Mullins Decl. ¶ 10). Thus, the proposed Settlement Notice and plan of notice sufficiently comport with due process.

## IV. CONCLUSION

For all the foregoing reasons, the Court GRANTS Plaintiffs' motion to (1) conditionally certify the class as defined in the Settlement Agreement; (2) appoint Plaintiffs Salvador Aquino, Susan Ford, Monicalayle Garcia, Barbara Kraus, Martha Lopez, Francisco Martinez, and Megan Sargent as class representatives; (3) appoint Christina Humphrey Law, P.C. and Tower Legal Group, P.C. as class counsel; and (4) preliminarily approve the proposed Settlement Agreement, including the Notice Plan and Plan of Allocation.

The hearing date for the Final Fairness Hearing is hereby set for Wednesday, November 8, 2023, at 1:30 p.m. in Courtroom 5C of the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012.

**IT IS SO ORDERED.**

DATED: July 11, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE