JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR AQUINO, SUSAN FORD, MONICALAYLE GARCIA, BARBARA KRAUS, MARTHA LOPEZ, FRANCISCO MARTINEZ, MEGAN SARGENT, individually and as a representative of a Putative Class of Participants and Beneficiaries, on behalf of the 99 CENTS ONLY STORES 401(K) PLAN,<br><br>                    Plaintiffs,<br><br>          v.<br><br>99 CENTS ONLY STORES LLC; THE RETIREMENT COMMITTEE OF THE 99 CENTS ONLY 401(K) PLAN; and DOES 1 through 20,<br><br>                    Defendants. | Case No. 2:22-cv-01966-SPG-AFM<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [ECF No. 71]** |

Before the Court is an unopposed motion for final approval of class action settlement ("Motion") from Plaintiffs Salvador Aquino, Susan Ford, Monicalayle Garcia, Barbara Kraus, Martha Lopez, Francisco Martinez, and Megan Sargent ("Plaintiffs"), both individually and as a representative of a Putative Class of Participants and Beneficiaries, on behalf of the 99 Cents Only Stores 401(k) plan (the "Plan"). (ECF No. 71). The Court

heard oral argument on November 8, 2023. Having considered the submissions of the parties, the relevant law, the record in this case, and the arguments of counsel during the hearing, the Court hereby **GRANTS** Plaintiffs' Motion.

## I.    BACKGROUND

### A.    Plaintiffs' Allegations

This is a class action lawsuit brought by Plaintiffs against Defendants 99 CENTS ONLY STORES LLC ("99 Cents") and the Retirement Committee of the 99 Cents Only Stores 401(k) Plan ("Retirement Committee") seeking repayment to the Plan of the lost profits from Defendants' breaches of their fiduciary duties under the Employee Retirement Income Security Act ("ERISA") and injunctive relief. (ECF No. 40 ("FAC")). Plaintiffs were employees of 99 Cents and participants in the Plan. (FAC ¶ 14–20). Defendant 99 Cents was the sponsor and administrator of the Plan, and Defendant Retirement Committee, comprised of Defendants John Does, assisted in the Plan's administration. (FAC ¶ 22–24).

Plaintiffs claim they were injured by Defendants' "lack of skill, flawed processes and imprudent decisions," which Plaintiffs assert were in breach of Defendants' fiduciary duties, because "(1) Defendants offered Plaintiffs, and Plaintiffs invested in, higher cost fund shares when otherwise identical lower cost shares were available … (2) Defendants permitted Plaintiffs and other Plan participants to be charged excessive service fees, … and (3) Defendants chose and continually offered Plaintiffs, conflicted, expensive, proprietary target date funds, which also served as the default investment as opposed to a myriad of other lower cost, unconflicted, prudent options." (FAC ¶ 8). As a result, Plaintiffs claim they experienced reduced account balances and diminished returns on their 401(k) investments. (*Id.*).

Although the Court has already explained at length the settlement agreement, the Court restates in this order its earlier explanation to aid comprehension of this final order. *See* (ECF No. 70 at 2-4).

**B.    Procedural History**

On March 25, 2022, Plaintiffs filed their Class Action Complaint alleging two causes of action: (1) breach of fiduciary duties of prudence and loyalty, and (2) breach of fiduciary duties in violation of the duty to investigate and monitor investments and covered service providers.  (ECF No. 1).  On June 6, 2022, Defendants filed a motion to dismiss Plaintiffs' Class Action Complaint.  (ECF No. 31).  On June 27, 2022, Plaintiffs filed their First Amended Class Action Complaint, from which they removed the duty of loyalty claim, and modified allegations relating to the duty of prudence claim.  (ECF No. 40).  On July 11, 2022, Defendants filed a motion to dismiss the First Amended Complaint in part.  (ECF No. 44).  Plaintiffs opposed on September 28, 2022, (ECF No. 55), and Defendants replied on October 5, 2022.  (ECF No. 57).  After the Court granted a series of continuance requests from the parties to allow the parties to engage in settlement negotiations, *see* (ECF Nos. 60, 63), the parties notified the Court on April 11, 2023, that they had reached a settlement. (ECF No. 65).  On April 19, 2023, Plaintiffs filed an unopposed Motion for Preliminary Approval of Class Action Settlement.  (ECF No. 67).  The Court approved Plaintiffs' Motion for Preliminary Approval of Class Action Settlement on July 11, 2023. (ECF No. 70).  In accordance with Federal Rule of Civil Procedure 23(e), Plaintiffs bring the instant Motion. (ECF No. 71).  The Motion is unopposed.

**C.    The Settlement Agreement**

According to Plaintiffs' Motion for Preliminary Approval of Class Action, the parties reached settlement "after over a year of hard-fought litigation, including discovery, motion practice, and after arms-length negotiations."  (ECF No. 67 at 1).  The parties engaged in settlement negotiations over the course of several months.  (ECF No. 67 at 7–8).  Their settlement efforts included a mediation session on November 7, 2022, with a mediator from Judicial Arbitration and Mediation Services.  (*Id.*).  On April 17, 2023, the parties executed their final settlement agreement.  (ECF No. 67-2 ("Humphrey Decl.") ¶ 8); *see* (ECF No. 67-3 (the "Settlement Agreement")).  The Settlement Agreement provides the following key provisions:

1               1.   <u>Class Definition</u>

2              The Settlement Agreement defines the putative class as: "All persons who

3    participated in the Plan at any time during the Class Period, including any Beneficiary of a

4    deceased Person who participated in the Plan at any time during the Class Period, and any

5    Alternate Payee of a Person subject to a QDRO[1] who participated in the Plan at any time

6    during the Class Period." (Settlement Agreement § 1.53). The Class Period ranges from

7    March 25, 2016, through the date the Court approves the proposed agreement. (*Id.* § 1.14).

8    There are approximately 5,700 class members and approximately $76,827,166 in Plan

9    Assets. (Humphrey Decl. ¶ 9).

10              2.   <u>Monetary Relief</u>

11             Defendants will deposit $750,000 into the settlement fund within 21 days of either

12   the Court's Preliminary Approval Order or the establishment of the Qualified Settlement

13   Fund. (Settlement Agreement § 4.4). The Settlement Administrator will then distribute

14   payments to the Plan to be added to the active accounts of current Plan participants and to

15   former participants of the Plan via individual check or by depositing the payments into

16   their individual retirement accounts. (Settlement Agreement, Ex. B §§ 1.2, 1.6, 1.7). The

17   Settlement Administrator will calculate payments according to instructions set forth in the

18   Plan of Allocation. (*Id.* § 1.5). An Independent Fiduciary will review the Settlement

19   Agreement and related application for fees and provide their opinion prior to the final

20   fairness hearing. (ECF No. 67 at 26).

21              3.   <u>Attorneys' Fees and Costs</u>

22             The putative class is represented by Christina Humphrey Law, P.C. and Tower Legal

23   Group, P.C. (ECF No. 67-3 at 78). Class Counsel seeks $250,000 in attorneys' fees,

24   $82,000 in litigation fees, and $70,000 in Class Representative Case Contribution Awards.

25

26

27   _____

[1] "QDRO" is an acronym for Qualified Domestic Relations Order. *See* (Settlement

28   Agreement § 1.42).

-4-

(ECF No. 67-3 at 29).  All fees will be paid from the Gross Settlement Account.  (ECF No. 67-3 at 4)).

> 4.    Release of Claims

The Settlement Agreement requires class members to release "[a]ny and all actual or potential claims (including any Unknown Claims), actions, causes of action, demands, obligations, or liabilities (including claims for attorney's fees, expenses, or costs) for monetary, injunctive, and any other relief" against Defendants that arise out of or relate to: "(a) the conduct alleged in the Complaint …whether or not the conduct was actually included as counts in the Complaint; (b) the selection, retention, and monitoring of the Plan's actual or potential investment options and service providers; (c) the performance, fees, and other characteristic of the Plan's investment options and service providers; (d) the Plan's fees and expenses, including without limitation, its recordkeeping and other service provider fees; and (e) the nomination, appointment, retention, monitoring, and removal of the Plan's fiduciaries."  (ECF No. 67-1 at 11).

### D.    Notice

In advance of the final fairness hearing, class notice was disseminated in accordance with notice procedures approved by this Court.  (ECF Nos. 63, 66).  The class notice included the full amount of the fees and costs award requested here.  No Class members have objected to Plaintiff's requested fee award.  *See* (ECF No. 68-1 ¶ 6).

## II.    LEGAL STANDARD

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  In considering such a request, the court must give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context."  *Id*.  Once a class is certified, Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements

affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before approving a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In the Ninth Circuit, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *In re Syncor*, 516 F.3d at 1101).

## III.    FINAL SETTLEMENT APPROVAL

The parties seek certification of the settlement class pursuant to Rule 23. For the reasons stated below, the Court finds that all of Rule 23's requirements have been satisfied.

### A.    Rule 23(a) and (b) Requirements

In its July 11, 2023, Order, the Court certified a provisional settlement class. (ECF No. 70). The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012); *see also Smith v. Keurig Green Mountain, Inc.*, No. 18-CV-06690-HSG, 2023 WL 2250264, at *4 (N.D. Cal. Feb. 27, 2023) ("Because no facts that would affect these requirements have changed since the Court preliminarily approved the class . . ., this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval."). Here, the Settlement Class has not changed since it was conditionally certified. All the criteria for class certification remain satisfied. Therefore, the Court confirms its July 11, 2023, Order certifying the Settlement Class.

### B.    Rule 23(e)

Once it has been established that the proposed settlement would bind class members, "the court may approve it only after a hearing and only finding that it is fair, reasonable, and adequate" after considering the following factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (quotations omitted).

    1.   <u>Adequacy of Representation by Class Representatives and Class Counsel</u>

    The first factor requires that the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). Class representatives are adequate if the named plaintiff and counsel do not have any conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Adequate representation of counsel is generally presumed in the absence of contrary evidence. *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

    In the July 11, 2023, Order, this Court concluded that Plaintiff satisfied the adequacy requirement under Rule 23(a)(4) and appointed Christina Humphrey Law, P.C. and Tower

Legal Group P.C. as Class Counsel. (ECF No. 70 at 8); *see Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met."). Plaintiff and Class Counsel possessed sufficient information to make an appropriate and informed evaluation of the proposed Settlement and to conclude that the proposed settlement fair, reasonable and adequate. Moreover, the class representatives seek the same relief as members of the proposed class and have no apparent conflicts of interest with the other class members. (ECF No. 70 at 8). Accordingly, the Settlement Class is adequately represented, and this factor weighs in favor of approval of the proposed settlement.

### 2. Arm's Length Negotiation

The second factor requires that the proposed settlement has been negotiated at "arm's length." Fed. R. Civ. P. 23(e)(2)(B). As this Court previously observed, the Parties have spent a substantial amount of time negotiating the specific terms of the Settlement Agreement. (ECF No. 70 at 12); *see Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). This factor thus weighs in favor of approval of the proposed settlement.

### 3. Adequacy of the Relief

The third factor requires the court to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The Court addresses each in turn.

### a) Costs, Risks, and Delay of Trial and Appeal

"Often, courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. When considering "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted). Here, the Parties were already engaged in contested litigation when they agreed to the Settlement, as evidenced by Defendants' two prior motions to dismiss. *See* (ECF Nos. 31, 44). Thus, continued litigation would likely be lengthy and complex, especially given the likely need for expert testimony from the Parties. The Parties also note a likely appeal. (ECF No. 67 at 23).

Regarding the likelihood of success, Plaintiffs estimate a 100% success rate at trial for their claims of excessive recordkeeping fees and share class violations, but a 50% chance of success as to their claims regarding the Plan's performance. *Id.* at 25. The Settlement Agreement is valued at $750,000, which is 25% of the total potential damages to be sought at trial. *Id.* Significantly, this view of the situation has been independently corroborated in the submitted Report of the Independent Fiduciary for the Settlement. *See* (ECF No. 73-1 at 4). Given the lower estimated success rate, the high cost of continued litigation, and the independent fiduciary's report, the proposed settlement amount appears fair and reasonable.

### b) Effectiveness of Proposed Method of Relief Distribution

Rule 23(e) directs the court to consider the "effectiveness of any proposed method of distributing relief to the class[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). "[T]he goal of any distribution method is to get as much of the available damages remedy to class members

as possible and in as simple and expedient a manner as possible." *Musgrove*, 2022 WL 18231364, at *6 (quoting 4 Newberg on Class Actions, § 13:53 (5th ed.)).  Further, "[o]ften it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes.

Here, the Settlement Agreement lays out the Plan of Allocation that provides how class members, both current and former participants of the Plan, receive payment. (Settlement Agreement, Ex. B).  Active participants in the Plan "shall receive their settlement payments as additions to their Active Accounts." (*Id.* § 1.3).  Former participants or beneficiaries who do not have active accounts with the Plan may receive settlement payments either as a rollover in an individual retirement account or by check.  *Id.*  The Plan of Allocation then provides instructions for the calculation of settlement payments by the Settlement Administrator.  *Id.* § 1.5.  The Court finds that this proposed method of relief distribution is both simple and effective.

### c)    Proposed Award of Attorneys' Fees

The Court must consider the "terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).  In the context of a class settlement, "courts have an independent obligation to ensure that" any award of fees and costs "is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.  In *Briseño*, the Ninth Circuit stressed that, before approving class action settlements, district courts must "scrutiniz[e] the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *See Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).

In this Court's Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 67), the Court stated that "Class Counsel will have to submit a formal motion for attorneys' fees along with evidence of time spent on the case and a

lodestar calculation before the Court can approve a specific amount in attorneys' fees." *Kaupelis*, 2021 WL 4816833, at *10. At the preliminary approval stage, the Court found the amounts proposed to be reasonable. Full review of the proposed attorneys' fees can be found in section IV below.

> d)    *Settlement Agreement with Lead Plaintiffs*

The Court must also evaluate any agreement made in connection with the proposed Settlement Agreement. See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). "Courts have discretion to issue incentive awards to class representatives." *Ochinero v. Ladera Lending, Inc*., Case No. SACV 19-1136 JVS (ADSx), 2021 WL 4460334, at *9 (C.D. Cal. July 19, 2021) (*quoting Rodriguez*, 563 F.3d at 958–59). Incentive or service awards intend to compensate class representatives for "work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. District courts evaluate these awards relative to the plaintiff's efforts, considering the financial or reputation risk involved, any personal difficulties encountered by the plaintiff, the amount of time spent, the duration of the litigation, and any personal benefit (or lack thereof) enjoyed by the plaintiff. *See Bravo v. Gale Triangle, Inc.*, CV 16-03347 BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017); *Ochinero*, 2021 WL 4460334, at *9. Though the Ninth Circuit has not set a benchmark, many district courts in this Circuit treat $5,000 incentive awards to be reasonable. *See Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016); *see also Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *6–7 (N.D. Cal. Dec. 3, 2012) (granting an award of $5,000 to plaintiff prosecuting a wage and hour class action). District courts also consider the "proportionality between the incentive payment and the range of class members' settlement awards." *Smith*, 2016 WL 362395, at *10.

Here, Plaintiffs request that the Court approve a contribution of $10,000 to each of the named Plaintiffs. (ECF No. 71 at 18). According to Plaintiffs, notice of the request was provided to all members of the Settlement Class and no objections to the awards were

made. *Id.* According to Plaintiffs, Plaintiffs have actively participated in the litigation and assisted Class Counsel in drafting the respective complaints and other documents, consulted with Class Counsel as needed, answered discovery-related requests for information and participated in settlement and strategy discussions. (ECF No. 71-1 at 17-18). According to the Declarations filed, most of the named Plaintiff have spent "over 50 hours" litigating this case, though some "approximately 20 hours." *See* (ECF No. 71-7 at 3 ("…over 50 hours"); ECF No. 71-9 at 3 (… "over 50 hours"); ECF No. 71-10 at 3 (… "over 50 hours"); ECF No. 71-11 at 3 (… "over 50 hours"); ECF No. 71-8 at 3 ("… approximately 20 hours litigating"). This is over twice the amount of the estimated highest gross settlement payment, which is $4,063.58, and roughly 115 times greater than the average gross settlement payment of $87.53. (ECF No. 71-1 at 15).

Given the average time spent for the named Plaintiffs as well as the proportion between the average gross settlement payment and the requested $10,000, $10,000 is not reasonable. Instead, the Court holds that $7,500 is a better reflection of Plaintiffs' efforts, amount of time spent, duration of litigation, and personal benefits accrued.

### 4.   Equitable Treatment Among Class Members

"Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. As evidenced by the Settlement Agreement's Plan of Allocation, members of the Class are provided recovery "on a *pro rata* basis, with no preferential treatment for the Class Representatives or any segment of the Settlement Class." (ECF No. 71 at 28). The calculation method provided by the Plan of Allocation is the same for each class member. (Settlement Agreement, Ex. B § 1.5). Accordingly, because the proposed settlement treats all class members equally, this factor weighs in favor of approval.

### 5. Sufficiency of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all Settlement Class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Although Rule 23 requires that reasonable efforts be made to reach all Settlement Class members, it does not require that each Settlement Class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

As described above and in this Court's Preliminary Approval of Class Settlement Order, the Settlement Notice describes the nature of the action and claims brought by Plaintiffs. (Settlement Agreement, Ex. A at 59). The Notice also explains who qualifies as a member of the class and how a member can either recover payment from the Settlement or file an objection to the Settlement Agreement. (*Id.* at 60–62). Additionally, the Settlement Administrator will send the Settlement Notice by email and first-class mail to the last known address of each class member. (ECF No. 71 at 27; ECF No. 67-5 ("Mullins Decl.") ¶¶ 5–6). Because all class members had Plan accounts, the Plan's recordkeeper has forwarding addresses for most class members. (ECF No. 71 at 27). Mailing the Notice to the last known addresses of class members "constitutes the best practicable notice under the circumstances." *Trujillo v. UnitedHealth Grp. Inc.*, 5:17-cv-2547-JFW (KKx), 2019 WL 13240414, at *2 (C.D. Cal. July 19. 2019). A Settlement Website and toll-free phone number will also be created to provide information and answer questions from class members. (Mot. at 27; Mullins Decl. ¶ 10). Thus, the proposed Settlement Notice and plan of notice sufficiently comport with due process.

## IV. ATTORNEYS' FEES AND COSTS

### A. Attorneys' Fees

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs. Attorney's fees and costs "may be

awarded in a certified class action where so authorized by law or the parties' agreement." *In re Bluetooth*, 654 F.3d at 941.  Where litigation leads to the creation of a common fund, and parties seek attorneys' fees using the percentage-of-recovery method, "courts typically use 25% of the fund as a benchmark for a reasonable fee award." *Martinez*, 2021 WL 9181893, at *7 (citing *In re Bluetooth Headset*, 654 F.3d at 942).  Courts may adjust the percentage of the common fund as appropriate under the circumstances. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–48 (9th Cir. 2002).  If a requested award is an upward departure from the 25% benchmark, even if the defendant agrees to pay it, courts apply the following factors (the "*Vizcaino* factors"): "(1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs.  Courts are encouraged to use a second method as a cross-check after choosing a primary method.  *See Martinez*, 2021 WL 9181893, at *7 (citing *In re Bluetooth Headset*, 654 F.3d at 944–45).

Here, the Settlement Agreement provides for a fee award amounting up to 33.33% of the common fund.  (ECF No. 71-1 at 8).  Because the award departs from the 25% benchmark, the Court considers each of the *Vizcaino* factors and will "cross-check" the reasonableness using the lodestar method.

### 1.   The Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).  Here, in exchange for the Settlement Class' release of the claims described in Section 1.27 of the Settlement Agreement, Defendants have agreed to pay a Settlement Amount of $750,000.  (ECF No. 71-1 at 6).  The average gross settlement payment is said to be $87.53. *Id.* at 15.  Counsel characterizes this as "a great result for a Plan with high turnover (retail store), small amounts invested by participants, and assets on the lower end (76 million)." *Id.* at 15.  Additionally, no class members objected to the Settlement in accordance with the Settlement Agreement, and the ILYM Group did not receive any objections to the Settlement, the proposed administrative expenses, attorneys'

fees and costs, or Plaintiffs' case contribution awards. *Id.* at 17. Based on the risks involved in continuing litigation and a "seemingly positive reaction from the Class Members," the Court finds that a positive result was achieved here. *See Bravo*, 2017 WL 708766, at *14.

"The Settlement of $750,000 provides 25% of the Class's total potential damages for all claims of approximately $3,000,000." (ECF No. 67-2 at 10). The Court here finds that this is an exceptional result. This monetary payout represents a significant benefit to the Class. Since ERISA actions are generally complex, the percentage of total potential liability recovered here is an impressive result. *Foster v. Adams & Assocs., Inc.*, No. 19-cv-02723-JSC, 2022 WL 425559, at *4 (N.D. Cal. Feb. 11, 2022) ("ERISA is an 'enormously complex' statute, and many ERISA matters also involve facts that are 'exceedingly complicated.'") To compare, on final approval of the settlement of an ERISA fiduciary breach class action where the "settlement fund represent[ed] approximately 29% of Plaintiffs' claimed damages as trial," another court in this district concluded that the settlement was "an exceptional result" that "justifie[d] an attorney fee award of one-third of the settlement fund." *Marshall v. Northrup Grumman Corp.*, 16-CV-6794 AB (JCX), 2020 WL 5668935, *2-3 (C.D. Cal. Sept. 18, 2020). The results here achieved thus weigh in favor of awarding the requested 33.33% fee.

### 2.    Risk of Litigation

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048. Here, counsel has represented that, at least for Plaintiff's first claim, there would be a "100% success rate" at trial. (ECF No. 71-1 at 14). However, the Parties were already engaged in contested litigation when they agreed to the Settlement, as evidenced by Defendants' two prior motions to dismiss. *See* (ECF Nos. 31, 44). Continued litigation would likely be lengthy and complex, especially given the likely appeal. (ECF No. 67 at 23). On balance, this factor weighs in favor of awarding the requested 33.33% fee based on the fact that,

although *some* recovery is almost guaranteed by continued litigation, there are significant downstream risks associated with further litigation.

### 3.    Skill Required and Quality of Work

The experience of counsel is also a factor in determining the appropriate fee award. *Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCX), 2017 WL 9614818, at *3 (C.D. Cal. Oct. 24, 2017). Courts in the Ninth Circuit have justified fee awards of one-third of a common fund based, in part, on the experience of counsel in litigating ERISA class actions. *See In re Pub. Serv. Co.*, No. 91-0536M, 1992 WL 278452, at *8 (S.D. Cal. July 28, 1992) (experience in complex class actions weighed in favor of fee award of one-third common fund). Indeed, "ERISA 401(k) fiduciary breach class actions involve complex questions of law and have not been widely litigated to this point." *Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCX), 2017 WL 9614818, at *4 (C.D. Cal. Oct. 24, 2017). The settlement outcome achieved here is the result of over a year and a half of investigation and motions practice by counsel, some of which commenced prior to filing of this suit. As explained by Counsel, "a substantial amount of time [was] spent in the pre-litigation phase working with the expert consultants, reviewing documents produced by the Plan Sponsor pursuant to 29 U.S.C. § 1024(b)(4)" among other tasks. (ECF No. 71-2 at 2-3). Moreover, class counsel Christina Humphrey has been practicing law for "twenty-two (22) years[.]" (ECF No. 71-2 at 2). Both counsel "for…Plaintiffs and Defendants have experience litigating ERISA claims, and their knowledge regarding the merits of the case is strong considering the extensive discovery conducted and the number of issues contested in this case." (ECF No. 71-1 at 16). Accordingly, this factor also weighs in favor of an upward departure from the benchmark amount.

### 4.    Contingent Nature and Financial Burden

Courts consider whether the contingent nature of the representation may justify a higher percentage fee award based on the risk that counsel may not recover any award, as

well as the financial burden accompanying the contingent nature of the representation.  *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047; *see also Vizcaino*, 290 F.3d at 1048–50.

Here, Class Counsel has "collectively spent 325.9 hours on the litigation" and has incurred, along with co-counsel, actual costs "in the amount of $80,246.21." (ECF No. 71-2 at 2, 6).  "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).  However, standing alone this factor does not justify an upward departure from the benchmark. *See, e.g., Clayton v. Knight Transp.*, 1:11-cv-00735-SAB, 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013) (acknowledging that the contingent nature of the fee "is an important factor," but declining to grant an upward departure where "the risks associated with this case are no greater than that [sic] associated with any other [similar action].").  Considering the relatively low number of hours spent working on this case – compare, for instance, an ERISA action involving 3,527.5 hours in *Hurtado v. Rainbow Disposal Co.*, No. 817CV01605JLSDFM, 2021 WL 2327858, at *5 (C.D. Cal. May 21, 2021) – the Court finds that this factor does not weigh in favor of the upward departure.

### 5.    Lodestar Cross Check

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."  *Vizcaino*, 290 F.3d at 1050.  The fee applicant bears the burden of showing that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted).  However, courts may also "rely on [their] own familiarity with the legal market."  *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  As a general rule, the forum district represents the relevant legal community.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

Class Counsel have both proffered declarations in support of the reasonableness of their requested rates and setting forth their relevant skill and experience.  Class counsel

represents that "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions." (ECF No. 78 at 3). The average percentage of the fund award in class actions is approximately one-third. *Romero v. Producers Dairy Foods, Inc.*, No. 05-484, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) ("fee awards in class actions average around one-third of the recovery") (quoting Newberg on Class Actions § 14.6 (4th ed. 2007)). Additionally, Class Counsel has provided for the Court a list of ERISA fiduciary breach settlements nationwide that awarded 1/3 of the common fund in fees. *See* (ECF No. 78 at 5).

The Court now considers the $199,408.50 lodestar figure, the claimed 325.9 hours worked, and the 1.07 multiplier in performing its reasonableness check using the lodestar method. *See* (ECF No. 71-2 at 6). To calculate the lodestar, the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Attorneys' fee awards should include compensation for "all hours reasonably expended prosecuting the matter," excluding "hours that are excessive, redundant, or otherwise unnecessary[.]" *Martinez*, 2021 WL 9181893, at *10. "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *Thieriot v. Celtic Ins. Co.*, No. C-10-04462-LB, 2011 WL 1522385, at *6 (N.D. Cal. Apr. 21, 2011) (citation omitted); *see also Hernandez*, 2023 WL 5725581, at *7 (C.D. Cal. Aug. 21, 2023); *Bravo*, 2017 WL 708766, at *18 (finding an hourly rate reasonable even when "counsel does not provide adequate support for [counsel's] proposed hourly rate" because, for the "lodestar 'cross-check,' [it] need not be as exhaustive as a pure lodestar calculation" (cleaned up) (citing *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *14 (CD. Cal. July 21, 2008)).

Here, the submitted hourly rate and hours worked are reasonable. Class Counsel's submitted hourly rates range between $625 per hour and $925 per hour for attorneys and $215.00 per hour for her paralegal. (ECF No. 71-2 at 4). In support of lead Class Counsel's

$925 per hour rate, Class Counsel states that she has "twenty-two years" experience as an attorney and "twenty years of extensive class action litigation experience, including class action trial experience in multiple actions[.]" *Id.* at 4. In support of the $650 per hour rate, counsel states that her colleague "has been practicing for eleven years[.]" *Id.* Finally, in support of the paralegal rate, Class Counsel "has a paralegal certificate and [has worked] as a paralegal in law firms for approximately six years." *Id.* In a similar ERISA breach of fiduciary duty class litigation, a court approved "rates ranging from $280 to $1,050." *Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-CV-01126-SB-SHK, 2023 WL 3325190, at *6 (C.D. Cal. Mar. 11, 2023); *see also* (ECF No. 78 at 3).

Lastly, the multiplier appears to be within the range approved by the Ninth Circuit, as multipliers ranging from 1.0-4.0 are frequently rewarded in common fund cases. *See Vizcaino*, 290 F.3d at 1051 n. 6. Here, a lodestar cross-check confirms that a 1/3 fee award is reasonable as it only represents a slight multiplier of approximately 1.07. (Humphrey Decl. ¶ 9). *See Vizcaino*, 290 F.3d at 1051 (district court did not abuse its discretion when it applied lodestar cross-check, which resulted in multiplier of 3.65, in approving 28% attorney fee award under percentage method for class counsel who had represented freelance workers employed by software company in action for benefits under company's employee stock purchase plan).

On balance, then, the Court finds that the proposed upward departure for the attorney award is justified given the above factors.

## V.    CONCLUSION

For the foregoing reasons, the Court:

1. **GRANTS** Plaintiffs' Unopposed Motion for Final Approval and approve settlement of the action between Plaintiffs and Defendants, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate and directs the Parties to perform their settlement in accordance with the terms set forth in the Settlement Agreement;

2. **GRANTS** an award to Class Counsel for $250,000 in attorneys' fees and costs;

3. **GRANTS** a service award of $7,500 to each Class Representative;

4.  Retains jurisdiction to enforce the Settlement Agreement and resolve any disputes that might arise during its term.

**IT IS SO ORDERED.**

DATED:  January 2, 2024

_____
HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

-20-